## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 26 2019, 6:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Natalie F. Weiss
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of N.W., Mother, and R.W. and P.W., Minor Children: <br><br> N.W., <br><br> *Appellant-Respondent,* <br><br> v. <br><br> Indiana Department of Child Services, <br><br> *Appellee-Petitioner.* | August 26, 2019 <br><br> Court of Appeals Case No. 19A-JT-429 <br><br> Appeal from the Dearborn Circuit Court <br><br> The Honorable James D. Humphrey, Judge <br><br> Trial Court Cause Nos. 15C01-1811-JT-24 15C01-1811-JT-25 |

**Kirsch, Judge.**

[1]     N.W. ("Mother") appeals the juvenile court's order involuntarily terminating her parental rights to her children, R.W. and P.W. ("Children"). On appeal, she contends that the Indiana Department of Child Services ("DCS") failed to demonstrate by clear and convincing evidence that termination of her parental rights was in the best interests of Children.

[2]     We affirm.

## Facts and Procedural History

[3]     In March of 2017, Mother was living with her two children, R.W., born August 12, 2013, and P.W., born December 31, 2015. Mother had become addicted to opiate prescription medication and was wrestling with other substance abuse issues.

[4]     On March 22, 2017, DCS filed petitions alleging that Children were children in need of services ("CHINS") as a result of Mother's substance abuse issues. Specifically, Mother was taking non-prescribed pain medication (oxycodone). *Tr. Vol. II* at 17-18. DCS requested, and the juvenile court authorized, the detention of Children pending CHINS adjudication, and Children were removed from Mother's care on March 23, 2017 due to the effect of Mother's substance abuse on them. *Id*. at 17. At the time DCS became involved, Mother was addicted to opiates, dealing with the grief regarding the death of her mother, and had seen her husband sentenced to a lengthy term in prison. *Id*. at 46. On May 18, 2017, the juvenile court determined that Mother had substance abuse issues and had admitted she could benefit from services, and on June 28,

2017, the juvenile court found Children to be CHINS and entered a dispositional order, under which Mother was ordered to participate in various services and follow certain guidelines. *Id*. at 18.

[5] In September 2017, Mother was arrested and charged with theft for taking merchandise from a Walmart store without paying for it. *Id*. at 28. Mother pleaded guilty and was placed on probation. A probation violation was filed on October 1, 2018, when Mother tested positive for buprenorphine without a valid prescription. *Id*. at 29. A warrant was issued for her arrest, and she was incarcerated for violating her probation and released sometime in late 2018 or early 2019. *Id*. at 29-30.

[6] Under the dispositional order, Mother was referred to an intensive outpatient program ("IOP") for substance abuse treatment, but she stopped attending in November of 2017, then came back for one session in April 2018, but was ultimately terminated from the service. *Id*. at 14-15. Mother had also participated in in-home and visitation services until November of 2017 when she stopped appearing for court hearings and family team meetings and became non-complaint in visitation services. *Id*. at 19-20, 25, 28. Mother was referred to drug screen services, but she was sporadic in her compliance, failing six out of thirteen screens and was terminated from the service in late 2017. *Id*. at 21-23.

[7] Mother only met with her home-based case manager one time in November 2017 and had no further communication with her. *Id*. at 8-9. In February

2018, a supervisor for the home-based service provider took over Mother's case, and the file remained open for several months, but the supervisor was unable to get into contact with Mother during that period of time. *Id*. at 11.

[8] Mother only attended two Child and Family Team Meetings, although one was held every three months, and Mother fell asleep during one of the meetings she attended. *Id*. at 26-27. The FCM's last contact with Mother was in August 2018, when Mother stated she wanted to voluntarily relinquish her parental rights. Mother did not see Children after November 2017. *Id*. at 24. Before that date, Mother participated sporadically in visitation, and she did not attempt to reengage in visitation services at any point after November 2017. *Id*. at 27-28. At the termination hearing, Mother testified she was not sure when she had last seen Children and she was "surprised" that she last visited with them in November 2017. *Id*. at 51.

[9] On November 7, 2018, DCS filed petitions to terminate Mother's parental rights to Children, and on January 2, 2019, the juvenile court commenced a hearing on the petitions. Evidence was presented that Mother had not completed any services since November 2017. *Id*. at 19. At the time of the evidentiary hearing, DCS's plan for Children was adoption. *Id*. at 32. Children were doing well in their pre-adoptive home and had bonded to their foster parents. *Id*. The FCM stated that she did not believe that the conditions that led to Children's removal would be remedied and that reuniting Children with Mother would be a threat to Children's well-being and recommended termination of parental rights. *Id*. at 30-31.

Mother was present at the initial hearing. *Id*. at 4. There, she was provided with the time and date for the evidentiary hearing, but she failed to appear at the evidentiary hearing without any explanation. *Id*. 4-5. The juvenile court ruled that Mother had proper notice and held the hearing in her absence. *Id*. at 5. At the conclusion of the evidence, the juvenile court took the matter under advisement. Following the evidentiary hearing, Mother contacted her attorney, who requested that the juvenile court re-open the case for a hearing on Mother's evidence. *Id*. at 38-39. The juvenile court granted the request and held a second evidentiary hearing on January 10, 2019. *Id*. at 39. The juvenile court again took the matter under advisement. On January 28, 2019, the juvenile court issued an its order terminating Mother's parental rights to Children. *Appellant's App. Vol. 2* at 37-40. Mother now appeals.

## Discussion and Decision

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. Parental interests are subordinate to the children's interests in determining the proper disposition of a petition to terminate parental rights. *Id*. Parental rights may be terminated when a parent is unable or unwilling to meet her parental responsibilities. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied*, 534 U.S. 1161 (2002). The purpose of terminating parental rights is not to punish the parent, but to protect the children. *In re D.D.*, 804 N.E.2d 258, 264-65 (Ind. Ct. App. 2004), *trans. denied*. In reviewing termination proceedings on appeal,

we will neither re-weigh the evidence nor assess the credibility of the witnesses. *In re S.P.H.*, 806 N.E.2d 874, 879-80 (Ind. Ct. App. 2004). We only consider the evidence that supports the trial court's decision and reasonable inferences drawn therefrom. *Id.*

[12] Our standard of review for the trial court's findings of fact and conclusions thereon is two-tiered. *Id.* First, we must determine whether the evidence supports the findings and, second, whether the findings support the conclusions of law. *Id.* In deference to the trial court's unique position to assess the evidence, we set aside the trial court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id.* A judgment is clearly erroneous only if the conclusions of law drawn by the trial court are not supported by its findings of fact or the conclusions of law do not support the judgment. *Id.*

[13] Before an involuntary termination of parental rights may occur, the State is required to allege and prove, among other things:

> (B) that one (1) of the following is true:
>
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State's burden of proof for establishing these allegations in termination cases "is one of 'clear and convincing evidence.'" *In re H.L.*, 915 N.E.2d 145, 149 (Ind. Ct. App. 2009). Moreover, if the court finds that the allegations in a petition described in section 4 of this chapter are true, the court *shall* terminate the parent-child relationship. Ind. Code § 31-35-2-8(a) (emphasis added).

[14] Mother argues that the juvenile court erred in finding that DCS met its burden of proof to support termination of her parental rights. Specifically, Mother contends only that DCS failed to prove that termination was in the best interests of Children. She concedes that there was evidence presented that she did not meet the requirements of the dispositional order but contends that this failure to meet each and every element of the order was not sufficient to demonstrate that termination was in best interest of Children. Mother asserts that she had made substantial improvements in her life at the time of the evidentiary hearing and that she should have been given more time to get her life back in order. She claims that while termination of her parental rights will have little or no effect on her children, it will withdraw services previously afforded to her.

[15]     We are not without sympathy to Mother's plight, but our focus is on the children. In considering whether the termination of parental rights is in their best interest, the trial court is required to look to the totality of the evidence and must subordinate the interests of the parent to those of the children involved. *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010) (citing *In re D.D.*, 804 N.E.2d at 267), *trans. dismissed*. In doing so, the trial court must subordinate the interests of the parents to those of the child involved. *Id*. A parent's historical inability to provide a suitable, stable home environment along with the parent's current inability to do so supports a finding that termination is in the best interest of the child. *In re A.P.*, 981 N.E.2d 75, 82 (Ind. Ct. App. 2012). Testimony of the service providers, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *In re A.S.*, 17 N.E.3d 994, 1005 (Ind. Ct. App. 2014), *trans. denied*.

[16]     Here, the evidence showed that Mother had a serious drug addiction, which is the reason why Children were removed from her care initially. At the time Children were removed from Mother's care, she was taking oxycodone for which she did not have a prescription. Although ordered to participate in drug screens, Mother did not participate in most of the drug screens and failed six out of the thirteen to which she did submit. Her referral for drug screens was cancelled due to the fact that she missed too many appointments. Additionally, Mother never completed any of the services recommended by DCS, and she stopped attending IOP in November 2017, coming back for one session in April

2018, and then never attending again. Mother was also incarcerated for a drug-related issue when she tested positive for buprenorphine without a valid prescription while on probation. Further, Mother had not seen Children or participated in visitation with them for over a year prior to the evidentiary hearing. Before that date, Mother participated sporadically in visitations and did not try to reengage in visitation services after November 2017.

[17] Mother essentially contends that the juvenile court should have given her more time to meet the DCS requirements. However, a trial court need not wait until a child is irreversibly harmed such that his or her physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *In re A.K.*, 924 N.E.2d at 224. Additionally, a child's need for permanency is an important consideration in determining the best interests of a child. *Id*. (citing *McBride v. Monroe Cty. Office of Family & Children,* 798 N.E.2d 185, 203 (Ind. Ct. App. 2003)). In addition to the evidence showing that Mother had not participated in services or otherwise abided by the dispositional decree, the FCM testified that she believed termination of Mother's parental rights would be in Children's best interests. Based on the totality of the evidence, we conclude that the evidence supported the juvenile court's determination that termination of Mother's parental rights was in Children's best interests. Mother's arguments to the contrary are a request for this court to reweigh the evidence, which we cannot do. *In re S.P.H.*, 806 N.E.2d at 879-80. The juvenile court's conclusion was supported by clear and convincing evidence, and we affirm its judgment.

[18] Affirmed.

Baker, J., and Crone, J., concur.